

**SO ORDERED.**

**SIGNED this 05 day of March, 2012.**

_Stephani W. Humrickhouse_
**Stephani W. Humrickhouse**
**United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| JOHN MICHAEL TOOMEY and MARY CLAIRE TOOMEY,  DEBTORS | 10-03657-8-SWH |
| WILLIAM POSTON and REBECCA POSTON,  Plaintiffs | ADVERSARY PROCEEDING NO.  10-00312-8-SWH |
| v. | |
| JOHN MICHAEL TOOMEY and MARY CLAIRE TOOMEY,  Defendants. | |

### MEMORANDUM OPINION

This adversary proceeding was initiated by William and Rebecca Poston pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (a)(6) to determine the dischargeability of a debt owed to them by Chapter 7 debtors John and Mary Toomey. The trial was held on January 12 and January 19, 2012, in Raleigh, North Carolina. For the reasons that follow, judgment will be entered in favor of the defendants.

This bankruptcy court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. This is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2)(I), which this court may hear and determine.

## BACKGROUND

In 2002, John and Mary Toomey sold real property located at 1124 Berwyn Way, Raleigh, North Carolina ("the Property"), to William and Rebecca Poston. At the time of the sale, the Property was encumbered by a deed of trust and, in addition, by a home equity line of credit ("HELOC") with Central Carolina Bank ("CCB"), which was secured by a second deed of trust. At the closing of the sale of the Property to the Postons, the first deed of trust was paid off and canceled of record. The Toomeys' HELOC with CCB was paid down to zero but, unfortunately, the deed of trust securing the HELOC was not canceled and the HELOC account was not closed. In 2004, SunTrust succeeded to CCB's rights under the HELOC and corresponding deed of trust.

On August 11, 2006, after determining that the HELOC account was still open, the Toomeys drew $35,000 from the account, using the funds primarily to pay off credit card debts and to satisfy other household expenses. On March 6, 2007, the Toomeys drew from the HELOC again, this time in the amount of $17,993.60. These funds also were used to pay off credit card debt and to satisfy household expenses.

From 2007 until 2009, the Toomeys regularly made payments, mainly of interest, on the HELOC. The Toomeys defaulted on the HELOC in 2009. Between September 2009 and January 2010, SunTrust sent a series of letters to the Toomeys informing them of their default and

suspending their right to draw further from the line of credit. The Toomeys took no action in response to these letters. On January 20, 2010, SunTrust's counsel sent a notice of default and initiation of foreclosure proceedings letter to both the Toomeys and the Postons. The January 20, 2010 letter was the first notice received by the Postons that there was a lien asserted against the Property.

On May 6, 2010, the Toomeys filed a petition under chapter 7 of the Bankruptcy Code. On December 14, 2010, the Postons filed an adversary proceeding to determine their entitlement to: (1) a judgment against the Toomeys in the amount of the current outstanding balance on the HELOC; (2) an injunction ordering the Toomeys to secure cancellation of the HELOC deed of trust; and (3) a judgment against the Toomeys providing that their claim in the amount of the balance on the HELOC is non-dischargeable under 11 U.S.C. § 523(a). At the time of trial, the outstanding balance secured by the real property was $46,974.25.

## DISCUSSION

The Postons assert that their claim against the Toomeys for the balance owed under the HELOC should be deemed nondischargeable under §§ 523(a)(2)(A) and 523(a)(6). The court will treat each section separately. Section 523(a)(2)(A) provides as follows:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt-
> . . . .
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by -
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

3

The Postons bear the burden of proof and must establish the exception to discharge by a preponderance of the evidence in order to render the debt nondischargeable. See Grogan v. Garner, 498 U.S. 279, 291 (1991); Farouki v. Emirates Bank Int'l., Ltd., 14 F.3d 244, 249 (4th Cir. 1994).

The first statutory element that the Postons must prove is that the claim sought to be deemed nondischargeable is a debt "for obtaining money, property, services, or an extension, renewal, or refinance of credit as specified in subsection (2) of § 523(a)."[1] Simmons v. Wade (In re Wade), 43 B.R. 976, 980 (Bankr. D. Colo. 1984). This element goes to the heart of a § 523(a)(2) claim because "Congress intended § 523(a)(2) to protect creditors who were tricked by debtors into loaning them money or giving them property, services, or credit through fraudulent means." Nunnery v. Rountree (In re Rountree), 478 F.3d 215, 219-20 (4th Cir. 2007). Next, the Postons must prove actual fraud and, to do so under subsection (a)(2)(A), they must satisfy the common law elements of fraud by establishing: (1) that the Toomeys made a false representation; (2) knowing that the misrepresentation was false when they made it; (3) with the intent to deceive the Postons; (4) on which the Postons justifiably relied; and (5) which proximately caused harm to the Postons. Id. at 218; MBNA Am. v. Simos (In re Simos), 209 B.R. 188, 191 (Bankr. M.D.N.C. 1997); see also

---

[1] The court observes that the Postons are in a somewhat unique posture as plaintiffs because they challenge the dischargeability of a debt that is owed not to them, but to SunTrust. This raises the related question of whether the Toomeys' alleged fraud could allow them *to obtain* money, property or credit *from the Postons*, as is required by the statute. See Rountree, 478 F.3d 215 (discussing the "to extent obtained by" language). The Toomeys obtained money from SunTrust, and SunTrust obtained a lien on the Postons' property. Whether those facts will satisfy the premise of the statute is subject to argument, but because the court has determined that the Postons failed to establish all of the required elements of fraud and given that this issue was not raised by the parties, the court does not address it.

4 Collier on Bankruptcy ¶ 523.08[1][e] and [2] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed.) (outlining elements of a prima facie case of fraud).[2]

The Postons have met their burden with regard to the first, fourth, and fifth elements of fraud, in that they have established that the Toomeys made a false representation, which was justifiably relied upon by the Postons, and thereby caused them harm. Specifically, at the closing, when the Toomeys signed and delivered a General Warranty Deed to the Postons transferring the Property, they represented that other than those expressly indicated, there were no encumbrances on the Property.[3] That was a misrepresentation. In fact, the HELOC deed of trust was an encumbrance upon the Property at the time of closing. The Postons relied upon the receipt of good and marketable title to the Property, free and clear of all liens and encumbrances, save those indicated on the deed, and their reliance was justified. The HUD-1 closing statement clearly showed that funds were disbursed at closing to pay off both the mortgage loan and the HELOC. Finally, the inaccuracy of the representation made in the deed actually has harmed the Postons in that there presently is a lien on the Property and they will be unable to sell it without satisfying that lien. In addition, the Postons have incurred attorneys' fees and aggravation because of the cloud on their ownership.

---

[2] The traditional elements of fraud applied in 11 U.S.C. § 523(a)(2)(A) proceedings are essentially the same elements under North Carolina common law fraud. See Forbis v. Neal, 361 N.C. 519, 526-27, 649 S.E.2d 382, 387 (2007); Watts v. Cumberland Cnty. Hosp. Sys., Inc., 317 N.C. 110, 116-17, 343 S.E.2d 879, 884 (1986) (the well-established essential elements of fraud are: (1) false representation or concealment of a material fact; (2) reasonably calculated to deceive; (3) made with intent to deceive; (4) which does in fact deceive; (5) resulting in damage to the injured party).

[3] At the hearing, counsel for the Postons stated that the only representation upon which his clients were relying in support of a finding of fraud was the representation, contained in the General Warranty Deed tendered at the closing, that there were no liens or encumbrances on the Property except those specifically listed in the deed.

The Postons have failed, however, to prove the remaining two required elements of fraud: that the Toomeys knew *at the time they made the representation* contained in the General Warranty Deed that it was false, and that they made the misrepresentation *with the intent to deceive* the Postons. In other words, the Postons needed to prove by a preponderance of the evidence that the Toomeys knew, *at the time the General Deed of Warranty was transferred*, that their HELOC with CCB still existed, was still secured by the real property, and would survive the closing. Furthermore, the Postons needed to prove that the Toomeys signed the General Warranty Deed with the intent and purpose to mislead the Postons regarding the status of the title to the Property. See Dubois v. Lindsley (In re Lindsley), 388 B.R. 661, 668-69 (Bankr. D. Md. 2008); KMK Factoring LLC v. McKnew (In re McKnew), 270 B.R. 593, 619 (E.D. Va. 2001) (citing Koma v. Brooks (In re Brooks), 4 B.R. 237, 238 (Bankr. S.D. Fla. 1980) and Berk v. Stewart (In re Stewart), 10 B.R. 214, 217 (Bankr. C.D. Cal. 1981)).

The Postons cannot establish that the Toomeys knew the representation as to title was false at the time they made the representation because the evidence at trial proved otherwise. During his cross-examination, Mr. Toomey testified that when he closed the sale to the Postons and saw that the 1996 HELOC had been paid off, it was his understanding that the account was closed. He also testified on cross-examination that it was his understanding that the deed of trust was canceled when the account was closed. Furthermore, Mrs. Toomey testified during cross-examination that she and her husband paid off the line of credit at closing and it was her understanding that when they paid off the line of credit, the account was entirely canceled and closed. Their lack of knowledge concerning the viability of either the HELOC or the deed of trust is further supported by the fact that the Toomeys did not draw on the line of credit until several years after the sale of the Property, and

then only after they viewed their credit report, realized that the account might still be open, and later confirmed the credit access with SunTrust. The Postons offered no evidence that the Toomeys knew of the continuing existence of the HELOC encumbrance at the time of the closing. In fact, the court assumes that the Postons concede their lack of knowledge at that time.

The Postons also cannot establish that the Toomeys made a false representation with the intent to deceive them. As established above, the *only* representation the Toomeys made to the Postons was that the Postons were receiving clear title via the General Warranty Deed. The testimony is that at that time, the Toomeys thought that their HELOC with CCB was closed and that the corresponding deed of trust was canceled. The fact that the Toomeys waited four years to draw down on the HELOC and made payments on the line of credit for another two years further belies any assertion of intent to deceive. In sum, since there is no evidence that the Toomeys knew that the deed of trust had not been canceled, there is no basis whatsoever upon which the court can conclude that they intended to deceive the Postons when they executed the General Warranty Deed.

In a related argument, the Postons contend that the General Warranty Deed created a continuing representation by the Toomeys that the Property had clear title; therefore, the Postons reason, when the Toomeys did not 1) inform the Postons that they were drawing on the line of credit in 2006, and 2) advise them that SunTrust was claiming a lien on the Property, those omissions constituted misrepresentations warranting a finding of nondischargeability under § 523(a)(2)(A). The court cannot agree. In the General Warranty Deed, the Toomeys represented that they were transferring clear title at the moment of the closing. They promised to *defend* that title (the status of the title represented in the deed) in the future, and thereby had a contractual duty to do so. But the breach of a contractual duty does not, without more, constitute fraud.

7

A misrepresentation includes incorrect statements of a past or subsisting fact. See Overstreet v. Brookland, Inc., 52 N.C. App. 444, 452, 279 S.E.2d 1, 20 (1981). In contrast, representations as to future intentions or promises to perform certain acts in the future generally do not give rise to actionable fraud, unless the defendant had no intent to fulfill the promise at the time of its making. See Thomas v. Turner (Matter of Turner), 12 B.R. 497, 501 (Bankr. N.D. Ga. 1981); Williams v. Williams, 220 N.C. 806, 810-11, 18 S.E.2d 364, 366-67 (1942) (an unfulfilled promise can only be made the basis of an action for fraud if the promise was made with no intention of carrying it out). At trial, the Postons did not provide any evidence to indicate that at the moment the General Warranty Deed was transferred to the Postons, the Toomeys had no intention to keep their promise to defend clear title.

Perhaps more importantly, even if either the Toomeys' failure to inform the Postons that they were drawing on the line of credit in 2006, or their failure to advise the Postons that SunTrust was claiming a lien on the Property in 2009, constituted misrepresentations by omission in and of themselves, the Postons have not proven that such misrepresentations were fraudulent. The Toomeys testified that the impetus for drawing down on the HELOC in 2006 was Mr. Toomey's discovery that the line of credit was still being listed on his credit report. That discovery led him to inquire with SunTrust as to availability under the line. Once they determined that availability existed, the Toomeys decided to pay off their higher interest rate credit cards with the line of credit. That testimony was not disputed by the Postons. What the Postons do dispute is whether the Toomeys knew that drawing down on the line of credit would result in a lien on the Property. The Postons contend that the Toomeys must or should have known that the borrowings under the line of credit would encumber the Property, and/or that they should have made further inquiry of the

bank concerning the consequences of such borrowings.  However, the only evidence presented in support of that argument is that Mr. Toomey had executed many deeds of trust in his real estate development business and had familiarity with that type of document.  The Toomeys, however, affirmatively testified credibly that they believed that the line of credit was unsecured.  It is entirely plausible that the Toomeys did not know the legal effect of drawing down on the line of credit and the Postons had the burden to show otherwise.  Without such knowledge, the Postons cannot show that the Toomeys' failure to notify them of the borrowings under the line of credit was done with the intent to deceive them.

     The Postons have an even more difficult job proving fraud in the Toomeys' alleged failure to advise them of SunTrust's assertion of a lien and intent to foreclose on the Property. Through their exhibits and testimony brought out at trial, the Postons sought to establish that the Toomeys had specific information about the secured nature of the HELOC due to the terms of the agreement itself,  the mailings sent to them by SunTrust (which referred to, among other things, "mortgage interest"), the receipt of tax statements for mortgage interest (Form 1998), conversations with an accountant about the deductibility of interest on the HELOC,  and the receipt of default and foreclosure notices from SunTrust. The Postons' contentions with regard to all of these events give the court a full understanding of the basis for their frustration with this situation, and the court is sympathetic.  See Plaintiff's Trial Brief at pp. 14-18.  Those contentions do not, however, alter the crucial fact that by the time the Postons allege that the Toomeys had knowledge of the secured nature of the HELOC, the lien had already been funded, i.e., the damage had already been done. Therefore, the failure to notify the Postons (the alleged fraudulent omission) did not, and could not, result in the damages alleged by the Postons:   that is, the alleged omission was not the proximate

cause of the Postons' claim, and thus an essential element of fraud cannot be proven. The gist of all the evidence is that the failure to cancel the deed was the error of a third party, and that the Toomeys' use of the line of credit had consequences that they simply did not forsee or, unfortunately, investigate fully. The Postons have not established the elements of fraud and their claim is not nondischargeable under § 523(a)(2)A).

Next, the court turns to the Postons' claim under 11 U.S.C. § 523(a)(6). The statute provides that an individual debtor's discharge will not discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). For their claim to be nondischargeable under this provision, the Postons must show that the Toomeys injured the Postons, acted with intent to injure the Postons, and acted maliciously. See Rountree, 478 F.3d at 218.

The United States Supreme Court has found that "the word 'willful' in (a)(6) modifies the word 'injury,' indicating that non-dischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998). Thus, the applicable test under § 523 (a)(6) is "whether the debtor acted with substantial certainty [that] harm [would result] or a subjective motive to cause harm." Parsons v. Parks (In re Parks), 91 Fed. Appx. 817, 819 (4th Cir. 2003) (citing Miller v. J.D. Abrams, Inc. (In re Miller), 156 F.3d 598, 603 (5th Cir. 1998)). The Postons can succeed in their § 523(a)(6) claim only if the Toomeys' "acts [were] done with the actual intent to cause injury." Geiger, 523 U.S. at 61. The Postons sought to show that the Toomeys acted with a substantial certainty that by drawing on the HELOC, they would injure the Postons; or, that the Toomeys had a subjective motive to cause harm to Plaintiffs when they drew on the HELOC. See Parks, 91 Fed. Appx. at 819. The evidence presented at trial does

*not* establish that when the Toomeys drew down upon the line of credit, they did so knowing with substantial certainty that they were harming the Postons by creating a "funded" lien on the Property. It is regrettable that the Toomeys did not investigate further into the effects of drawing down on the line of credit. But, that failure to inquire cannot constitute willful and malicious conduct sufficient to support a § 523(a)(6) finding.

Likewise, there is insufficient evidence in the record to enable the court to find that the Toomeys had a subjective motive to cause harm to the Postons. Before the Toomeys drew on the HELOC, they had credit card debt totaling over $30,000. The Toomeys testified that their purpose in drawing on the HELOC was to pay off this credit card debt and it is evident from the record that the Toomeys' thought process, when they drew on the HELOC, was to simply transfer their credit card debt (which had higher interest rates) to the HELOC account (which had lower interest rates). There is no evidence that they intended to create or otherwise cause a lien on the Property and subject the Postons to possible foreclosure, even if that is the injury the Toomeys ultimately inflicted upon the Postons. The Toomeys' actions, no matter how ill-fated, do not rise to the level of "willful and malicious" as established by the Geiger decision.

## CONCLUSION

For the foregoing reasons, the court finds that the Postons have not established by a preponderance of the evidence that their claim should be deemed non-dischargeable under either §§ 523(a)(2)(A) or 523(a)(6). The clerk is directed to enter judgment accordingly.

**SO ORDERED.**

**END OF DOCUMENT**